## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| JOSEPH GOODWATER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:17-cv-00998 |
| | ) | |
| COUNTY OF CHARLESTON, | ) | |
| CHARLESTON COUNTY SHERIFF'S | ) | **ORDER** |
| OFFICE, DEP. J. COMFORT, | ) | |
| LT. PLUNKETT, and CAPTAIN TITTLE | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants County of Charleston (the "County"), Charleston County Sheriff's Office ("CCSO"), Dep. J. Comfort ("Comfort"), Lt. Plunkett ("Plunkett"), and Captain Tittle's ("Tittle") (collectively, "Defendants") motion to dismiss the amended complaint, ECF No. 23. For the reasons set forth below, the court grants the defendants' motion to dismiss in full.

## I.  BACKGROUND[1]

This case arises out of a property dispute. Plaintiff Joseph Goodwater ("Goodwater") owns a number of vacant lots in Mt. Pleasant, South Carolina. Goodwater, an African-American man, alleges that the property was purchased by his ancestor Richard Thompson in 1887. Goodwater and his siblings were made heirs to the property after the death of their grandmother, Maggie Thompson Goodwater.

---

[1] As an initial matter, the parties seem to have a markedly different understanding of the facts forming the underlying dispute. For the purposes of this motion only, the court takes Goodwater's version of the facts to be true.

In 1946, a white man named Dick Thompson represented that he owned the lots in question and granted an easement to the County of Charleston. In 1977, after litigation between the heirs on the property and Thompson, Thompson was determined to not own the property and indeed, never possessed a deed to any of the property. In 2013, Goodwater purchased an interest in the property from his cousin Radiyah I. Miller.[2] At the time of purchase, Goodwater was unaware of the easement. Indeed, Goodwater alleges that the easement was not a matter of record on the property at all.

Gardenhill Road, which connects Gadsdenville Road to Lieben Road, runs through three of Goodwater's lots. Due to the placement of Gardenhill Road, Goodwater alleges that he has lost the use of over 1/3 of his property and will be unable to build his retirement home in the location where he had planned to build the home. On January 6, 2016, Goodwater cut down a number of trees across Gardenhill Road so that it would be closed to traffic. Several Charleston County Sheriff's Office deputies, law enforcement officers, and the Charleston County Fire Department responded to the incident. In the process of responding to Goodwater's closing of Gardenhill Road, the officers threatened him with arrest.

On February 8, 2017 Goodwater filed a complaint against defendants, alleging a number of claims. ECF No. 1. Defendants filed a motion to dismiss the complaint, and the court held a hearing on the motion on August 19, 2017, during which it granted Goodwater leave to amend the complaint. On August 15, 2017, Goodwater amended his complaint. The claims can be broken down into two rough categories: (1) claims against

---

[2] During the hearing on this matter, Goodwater clarified that this property is not heirs' property.

the County of Charleston related to its "taking" of Gardenhill Road across the three lots Goodwater owned; and (2) claims against law enforcement defendants related to the incident on January 6, 2016 when law enforcement responded to Goodwater physically closing Gardenhill Road.  Defendants filed a motion to dismiss the amended complaint on August 23, 2017.  Goodwater responded on September 25, 2017.  The defendants replied on October 2, 2017.  The matter has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) ... does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief.  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff.  Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

### III.  DISCUSSION

As an initial matter, since the amended complaint is somewhat muddled, it is difficult to parse out what claims Goodwater is asserting against which defendants.  The court can surmise the following claims: (1) unconstitutional taking of his property by constructing Gardenhill Road through the lots; (2) deprivation of due process because defendants failed to give Goodwater notice and an opportunity to be heard and failed to follow prescribed statutory procedures governing inverse condemnation; (3) Defendants the Charleston County Sheriff's Department, Cannon, Comfort, Plunkett, and Tittle were negligent in failing to follow the proper procedures, and violated Goodwater's equal protection rights by engaging in selective enforcement in responding to the January 2016 incident when Goodwater physically blocked Gardenhill Road, and that defendants Cannon, Comfort, Plunkett, and Tittle violated U.S.C. § 1983; (4) the County committed a "taking" of Goodwater's property, and converted the property; and (5) due process claim against all defendants.  Since it is difficult to determine exactly what claims Goodwater is asserting, the court separates its analysis between those claims that are related to the construction of Gardenhill Road across Goodwater's vacant lots and those claims that stem from the law enforcement response to Goodwater physically closing Gardenhill Road to traffic in January 2016.

### 1.      Property-related Claims

### a.    Takings-related Claims

Defendants challenge counts 1, 2, 4, and 5 of the complaint, as well as all of the claims asserted against the County of Charleston, arguing that Goodwater lacks standing to assert any takings claim based on the construction of Gardenhill Road because any taking occurred before Goodwater purchased the lots in 2013. ECF No. 23 at 4. The court agrees, but only as to dismissing those specific portions of each count that relate specifically to the takings claim. For example, Goodwater appears to be asserting a procedural Due Process claim having to do with the County's failure to provide him notice and an opportunity to comment on Gardenhill Road. To state a valid procedural due process claim, Goodwater must demonstrate: (1) that he had a property interest; (2) of which the County deprived it; (3) without due process of law. Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 826 (4th Cir. 1995). Since Gardenhill Road does not constitute a taking, there has been no governmental deprivation of a property interest. Therefore, Goodwater's procedural Due Process claim fails.

Gardenhill Road, which is adjacent to the lots that Goodwater now owns, is an unpaved dirt road that was identified by the County of Charleston as a "community road" under the Community Road Program, enacted in 1965.[3] ECF No. 4 at 5. From

---

[3] Goodwater alleges that the easement Thompson granted in 1946 was fraudulent, and so at no time had Charleston County been granted a valid easement for Gardenhill Road to be a community road. Defendants attached a number of documents to their reply to the original motion to dismiss demonstrating that perpetual easements on the lots were granted to the Commissioners of Public Works for the Town of Mount Pleasant as of May 7, 1991. ECF No. 20 at 1. These documents were also discussed during the hearing on the original motion to dismiss. It is apparent that at least as of May 1991, the County had a valid recorded easement for Gardenhill Road on the lots, so the court need not make any finding about an easement granted in 1946. Furthermore, the Charleston County Council Directive, dated December 6, 2011, shows that Gardenhill Road has been

approximately 1987 until December 6, 2011, the County maintained Gardenhill Road but the road was not part of the County's regular maintenance system. On December 6, 2011, the County adopted the County Non-Standard Road Program ("CNSR" program), which brought community roads such as Gardenhill Road into the regular maintenance system of the County. ECF No. 4 at 5. In 2013, Goodwater purchased the lots. Defendants' main argument is that Goodwater purchased the lots after Gardenhill Road had already been constructed, and so does not have standing to pursue any claims related to the taking of the lots from the improvement of Gardenhill Road. ECF No. 4 at 5. The court agrees.

The Takings Clause of the Fifth Amendment of the United States Constitution, applicable to the States through the Fourteenth Amendment provides: "[N]or shall private property be taken for public use, without just compensation." Dolan v. City of Tigard, 512 U.S. 374, 384 (1994). The South Carolina Constitution provides that, "[e]xcept as otherwise provided in this Constitution, private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made for the property." S.C. Const. Art. I, § 13(a). "An inverse condemnation occurs when a government agency commits a taking of private property without exercising its formal powers of eminent domain." Hawkins v. City of Greenville, 594 S.E.2d 557, 562 (S.C. Ct. App. 2004). "A landowner has the burden of proving damages for the taking of the landowner's property . . . by inverse condemnation." Kiriakides v. Sch. Dist. of

---

maintained for approximately 34 years, which would make any easement that was granted dated 1987, not 1946.

Greenville Cty., 675 S.E.2d 439, 442 (S.C. 2009).  The standing doctrine has three

elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a
> legally protected interest which is (a) concrete and particularized, and (b)
> actual or imminent, not conjectural or hypothetical. Second, there must be
> a causal connection between the injury and the conduct complained of—the
> injury has to be fairly traceable to the challenged action of *235 the
> defendant, and not the result of the independent action of some third party
> not before the court. Third, it must be likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation marks,

citations, and alterations omitted).

Defendants offer no caselaw for the proposition that a successor in title cannot

establish requisite standing to assert a claim based on government action on property that

the successor did not own at that time.  However, it is clear that Goodwater purchased the

lots in 2013—two years after the December 6, 2011 date on which Gardenhill Road was

incorporated into the Charleston County road system and multiple decades after the date

when Gardenhill Road started being maintained by the County as a community road.

Ultimately, Goodwater purchased the lots subject to the easement for Gardenhill Road.

Whether the owner of the lots at the time that Gardenhill Road was first constructed—

although as an unpaved dirt road, it is not clear that Gardenhill Road was ever truly

constructed—received just compensation under the takings clause is irrelevant to whether

Goodwater can assert a takings claim now.  From a practical perspective, to accept

Goodwater's takings claim would present an untenable prospect for government—to

constantly relitigate the takings issue every time that, say, land adjacent to a major

interstate highway is sold.  Therefore, all of Goodwater's claims based on the taking of the lots fail.

### b.      Conversion

The fourth cause of action in Goodwater's complaint refers to the County's maintenance of Gardenhill Road on his lots as a "conver[sion] . . . without proper compensation."  Compl. ¶ 126.  However, conversion is not available for the exercise of rights over real property such as the lots.  Schubert v. Fed. Nat'l Mortg. Ass'n, 2013 WL 12137597, at *3 (N.D. W. Va. Mar. 27, 2013) (holding that the tort of conversion "is limited to actions involving personal property and not real property.").  This claim is dismissed.

### d.      Selective Enforcement

In count three, Goodwater seems to be alleging a selective enforcement claim, based on the issuance of "bogus and inflated fines" and the violation of "equal protection."  Compl. ¶118–119.  "To establish a selective-prosecution claim, a defendant must demonstrate that the prosecution 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'"  United States v. Olvis, 97 F.3d 739, 741–42 (4th Cir. 1996) (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)).  This requires that the plaintiff allege (1) that similarly situated individuals of a different race were not prosecuted; and (2) that the decision to prosecute was invidious or in bad faith.  Id. at 739.  Goodwater has alleged no facts about similarly situated individuals—that is, he includes no allegations that there were other landowners in the area who were similarly situated but that the County did not incorporate community roads in those landowners' lots into the County's public roads system.  Neither does he allege that any

landowners were allowed to close public roads through their property by means of physically barring travelers through the road. Since Goodwater has pleaded no facts about similarly situated individuals, his selective enforcement claim fails. See Daubenmire v. City of Columbus, 507 F.3d 383, 390 (6th Cir. 2007) ("A claim of selective prosecution can survive dismissal "only when the motion alleges sufficient facts to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose.") (citation omitted).

### e. Equal Protection and Due Process claims

To the extent that Goodwater is alleging standalone equal protection or due process claims based on his race, these claims also fail because of his failure to plead facts about similarly situated landowners. Equity In Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011) (citing Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)) (emphasis added) (holding that to survive a motion to dismiss an equal protection claim, plaintiff must plead "sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus.").

### 2. Section 1983 claims

Goodwater's § 1983 claims against the individual law enforcement officers who responded to his physical closure of Gardenhill Road in January 2016 appear to be premised on the threat of arrest if Goodwater did not clear the property so that traffic could resume on Gardenhill Road. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he was (1) "deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) the conduct was "committed by a

person acting under color of state law."  Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983).  The color-of-state-law element is easily satisfied here; any actions by Defendants in responding to the closure of Gardenhill Road were certainly taken "under color of state or territorial law."  However, Goodwater fails to allege that he was deprived of a Constitutional right.  Since section 1983 is not, by itself, a source of any substantive rights, for the claims to proceed past the motion to dismiss stage Goodwater must state a violation of a constitutional right.  Goodwater does not explicitly state the constitutional violation that underlies his § 1983 claims, but a review of the caselaw demonstrates that courts considering § 1983 claims based on threats of arrest consider them to be unreasonable seizures in violation of the Fourth Amendment.  Kimball v. Town of Provincetown, 158 F. Supp. 3d 7, 12 (D. Mass. 2016) (evaluating whether officers' threat of arrest constitutes a seizure under the Fourth Amendment).

While a plaintiff may recover on a § 1983 action for a false arrest claim, it is not clear that in the Fourth Circuit that the threat of false arrest is a violation of a Constitutional right.[4]  In determining whether or not the officers' threat to arrest Goodwater gave rise to a "seizure" under the Fourth Amendment, the "crucial test is whether, taking into account all of the circumstances surrounding the encounter, the

---

[4] That being said, a number of other circuits have found that even a mere oral threat of arrest by a police officer constitutes a "seizure."  See Vickroy v. City of Springfield, Mo., 706 F.2d 853, 854 (8th Cir.1983) (holding that a seizure occurred when an officer threatened a person with arrest unless he showed identification); Kimball v. Town of Provincetown, 158 F. Supp. 3d 7, 14 (D. Mass. 2016) (holding that plaintiff was seized where officer made an initial threat to arrest tenant and repeated the threat hours later.).

police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Florida v. Bostick, 501 U.S. 429, 437 (1991) (quoting Michigan v. Chesternut, 486 U.S. 567, 569 (1988)). Here, Goodwater alleges that the police officers "refused to allow the Plaintiff to take pictures of his own property and demanded that the Plaintiff remove himself from the property or he would be arrested for violating the law." Compl. ¶ 46. An oral threat to arrest does not necessarily rise to the level of a constitutional seizure. Jones v. Ashford, No. CV TDC-14-3639, 2017 WL 221783, at *4 (D. Md. Jan. 18, 2017), aff'd, No. 17-1146, 2017 WL 2378207 (4th Cir. June 1, 2017) (quoting Kernats v. O'Sullivan, 35 F.3d 1171, 1179 (7th Cir. 1994)). In Jones v. Ashford, the court found that a law enforcement officer's order to leave the premises "did not necessarily constitute a seizure" where there was only one law enforcement officer present, he displayed no weapon, and he did not physically touch the plaintiff. In contrast, here three law enforcement officers threatened Goodwater with arrest if he did not remove himself from his own property, even upon being provided a copy of the deeds demonstrating that Goodwater owned the land.

Under the facts alleged in this case, it is a close question of whether the officers' threat of arrest is a seizure within the meaning of the Fourth Amendment. That being said, based on Goodwater's allegations, any threat to arrest him if he did not remove himself from Gardenhill Road so that the road could once again be opened up to traffic was justified. In Ward v. Wal-Mart Stores, Inc., 2014 WL 279678, at *1 (D. Md. Jan. 22, 2014), the court adopted the Seventh Circuit test in Schlessinger v. Salimes, 100 F.3d 519, 522 (7th Cir. 1996) where the court addressed a case in which a police officer ordered a customer at a restaurant to leave or face arrest. The court noted that "We may

11

assume that an order by the police along the lines of 'Do X or be taken into custody' requires the same sort of justification that custody itself requires—that is, depends on probable cause to believe that the person has committed a crime." Id.  Closing a public road to traffic is a crime in South Carolina.  Defendants cite to both S.C. Code § 57-7-20, which establishes as a criminal offense for any person who puts any "substance or object likely to injure any person, animal, or vehicle upon the highway" and § 57-7-210, which makes it "unlawful for any person wilfully . . . to place obstructions upon any such highway or to throw or place on any such highway any objects likely to cut or otherwise injure vehicles using them."  ECF No. 4 at 14.

Furthermore, even if threatening Goodwater with arrest were a seizure within the meaning of the Fourth Amendment, the officers are shielded from liability by the doctrine of qualified immunity.  Qualified immunity protects "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  An issue is said to be "clearly established" when it "has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the State."  Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998), aff'd, 526 U.S. 603 (1999).  There has been no such authoritative ruling on this issue by the Fourth Circuit.  Therefore, all of Goodwater's claims under § 1983 against the individual defendants fail as a matter of law.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to dismiss the

amended complaint in full.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 12, 2018**
**Charleston, South Carolina**